UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RUSSELL B.,                      )
                                 )
        *Plaintiff*     )
                                 )
v.                               )   No. 1:17-cv-00418-JHR
                                 )
NANCY A. BERRYHILL,              )
*Acting Commissioner of Social Security,* )
                                 )
        *Defendant*    )

***MEMORANDUM DECISION***[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that, in assessing his residual functional capacity ("RFC"), the ALJ failed to properly evaluate the impact of either his attention deficit hyperactivity disorder ("ADHD") or his degenerative disc disease ("DDD"). *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 14) at 3-14. I find no reversible error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 21.

1

relevant part, that the plaintiff had the severe impairments of DDD of the lumbar spine, borderline intellectual functioning, and ADHD, Finding 2, Record at 28; that he had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was limited to simple and repetitive tasks in an environment with no public interaction and only occasional interaction with co-workers and supervisors and to occasional climbing of ladders, ropes, and scaffolds and frequent balancing, kneeling, stooping, crouching, and crawling, Finding 4, *id*. at 31; that, considering his age (21 years old, defined as a younger individual, on the date his application was filed, August 21, 2014), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 38-39; and that he, therefore, had not been disabled from August 21, 2014, the date his application was filed, through September 15, 2016, the date of the decision, Finding 10, *id*. at 39-40. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

*Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Handling of Plaintiff's ADHD

In adopting the mental limitations set forth in his RFC determination, the ALJ gave great weight to the opinion of examining neuropsychologist Christine M. Fink, Ph.D., reflected in a report of a July 2014 neuropsychological evaluation of the plaintiff, as well as to the opinions of agency nonexamining psychologists Brian Stahl, Ph.D., and Thomas Knox, Ph.D., dated October 25, 2014, and February 3, 2015, respectively. *See* Record at 38, 107-09, 119-21, 309-20.

Both Drs. Stahl and Knox determined that the plaintiff retained the capacity to understand and remember simple instructions and tasks, work in two-hour blocks performing simple tasks over the course of a normal workday/workweek, work with co-workers and supervisors but not the public, and adapt to simple changes. *See id*. at 108-09, 120-21.

The ALJ explained that he accorded the Stahl and Knox opinions great weight because they were "supported by the results" of the Fink evaluation. *Id*. at 38. He elaborated:

> The [plaintiff]'s performance on standardized cognitive testing was generally consistent with his performance on the same measures in 2009. The opinion is consistent with the medical record and the [plaintiff]'s reported activities of daily living, including driving, running errands, playing videogames, part-time work, and care of his grandmother.

*Id*. He stated that he gave the Fink opinion great weight because (i) "Dr. Fink had the opportunity to interview the [plaintiff] and his mother and to review records[,]" (ii) her opinion was "supported by explanation and relevant medical evidence, including performance on standardized instruments and findings on mental status examination[,]" and (iii) her opinion was "consistent with treatment records and the [plaintiff]'s reported activities of daily living." *Id*.

The plaintiff disputes that the Stahl and Knox opinions were supported by the Fink opinion or consistent with his activities of daily living. *See* Statement of Errors at 6. He adds that, in this case, as in *Lindsey v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00038-JAW, 2011 WL 86567 (D. Me. Jan. 10, 2011) (rec. dec., *aff'd* Feb. 28, 2011), the ALJ failed to adopt specific moderate limitations in concentration, persistence, or pace that Drs. Stahl and Knox assessed but neglected to incorporate into their own narrative conclusions. *See id*. at 8-10. He asserts that, as a result of these errors, the ALJ's mental RFC determination is unsupported by substantial evidence, warranting remand. *See id*. at 6-10. I am unpersuaded.

**1. Fink Report**

The plaintiff notes that Dr. Fink concluded that he had "'profound difficulty with sustained attention regulation, and mild difficulty with behavioral response inhibition or impulse control'" and made several recommendations to address his attentional difficulties. Statement of Errors at 7 (quoting Record at 317-18). Among those recommendations were the following: (i) "'[t]o maximize his attention and memory, it will be important for [the plaintiff] to reduce environmental distractions, including social media, during work blocks and times when increased concentration is warranted[,]'" (ii) the plaintiff "'is likely to attend to and process information at his best when in a structured, low stimulation environment[,]'" (iii) the plaintiff's "'attention and retention are likely to continue to be better when he is an active participant in the learning process[,]'" and (iv) "'[n]ew information should be presented in short, well-organized learning trials.'" *Id*. at 7-8 (quoting Record at 319).

The plaintiff contends that, in adopting the "narrative finding" by Drs. Stahl and Knox that his "cognitive deficits limited [him] to understanding and remembering simple instructions and tasks[,]" the ALJ "failed to address any of the attentional limitations identified by Dr. Fink[.]" *Id*.

4

at 8. However, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Specific Errors ("Opposition") (ECF No. 16) at 4, Dr. Fink did not purport to assess specific work-related mental functional limitations arising from the plaintiff's attentional deficits. Neither her description of the plaintiff's difficulty with "sustained attention regulation" as "profound" nor her recommendations to remediate the impact of that difficulty, Record at 317-19, constituted a mental RFC opinion, *see, e.g., Purdy v. Colvin*, No. 1:15-cv-330-JDL, 2016 WL 2770520, at *3-4 (D. Me. May 13, 2016) (rec. dec., *aff'd* Sept. 13, 2016), *aff'd*, 887 F.3d 7 (1st Cir. 2018) (rejecting argument that ALJ gave short shrift to opinion of examining consultant that "it would be difficult for the [claimant] to carry any weight due to her knee problems" when that sentence could not be "translated into a specific limitation, much less a prohibition on lifting altogether") (citations omitted); *Sheldon v. Colvin*, Civil No. 2:13-CV-315-DBH, 2014 WL 3533376, at *5 (D. Me. July 15, 2014) (noting that, although agency examining consultants "discuss[ed] the [claimant]'s work capabilities," their reports were not RFC opinions to the extent that "they both employ[ed] qualifiers such as 'may' and 'likely' and d[id] not always translate actual or expected difficulties into specific limitations") (citations omitted).

Nor is it so plain that the Fink recommendations clash with the RFC opinions of Drs. Stahl and Knox that I, as a layperson, can conclude that Drs. Stahl and Knox either ignored or misconstrued her report despite its inclusion in the record available for their review.[2]

The plaintiff, hence, falls short of demonstrating his entitlement to remand on the basis of this asserted error.

---

[2] On initial review, Dr. Stahl summarized the Fink report, correctly observing, *inter alia*, that Dr. Fink had noted that the plaintiff stopped taking Concerta in 2012 0r 2013, no longer reporting functional interference from ADHD. *See* Record at 105, 311.

5

## 2. Activities of Daily Living

The plaintiff next contends that his activities of daily living did not support the Stahl and Knox opinions because he cannot perform them independently, a proposition for which he cites his function report and testimony, the function report of his mother, and the Fink evaluation. *See* Statement of Errors at 6. He asserts that he lives with his mother and relies on her to provide him with shopping lists and cue him to shower, attend to personal hygiene, care for pets, clean, take medications, and do laundry. *See* Statement of Errors at 6. Finally, he notes that "[a] claimant's ability to perform activities of daily living does not, in itself, constitute positive evidence of his or her RFC." *Id.* at 7 (quoting *Drew v. Astrue*, Civil No. 09-363-B-W, 2010 WL 1946335, at *4 n.4 (D. Me. May 12, 2010) (rec. dec., *aff'd* June 4, 2010) (citations omitted)).

These points fall wide of the mark. In explaining why he deemed the plaintiff only mildly limited in activities of daily living, the ALJ acknowledged that the plaintiff lived with his mother, that his mother asserted that he needed verbal cues to get his hair cut, clean his ears, and complete household tasks, and that he was able to shop in stores with a list and the ability to call or text his mother with questions. *See* Record at 29. However, he then went on to discuss a number of additional activities in which the plaintiff engaged, *see id.* (plaintiff enjoyed playing videogames and engaging in outdoor activities including working on cars, fishing, dirt biking, mudding, and snowmobiling up to his physical limits, could drive, and reportedly was a good driver), none of which the plaintiff addresses in his statement of errors, *see* Statement of Errors at 6-7.

Nor did the ALJ impermissibly derive the plaintiff's RFC from his activities of daily living. He adopted the RFC assessments of Drs. Stahl and Knox. *Compare* Finding 4, Record at 41 *with id.* at 108-09, 120-21. "[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an

6

[ALJ] properly may take such activities into consideration in assessing . . . a claimant's allegations." *Christopher D. v. Berryhill*, No. 1:17-cv-00377-JHR, 2018 WL 4087477, at *3 (D. Me. Aug. 24, 2018) (citation and internal quotation marks omitted). The ALJ did so here.

The plaintiff, hence, falls short of demonstrating his entitlement to remand on the basis of this asserted error.

### 3. Asserted Internal Inconsistency in Stahl, Knox Opinions (*Lindsey*)

The plaintiff finally argues that, as in *Lindsey*, the ALJ committed reversible error in ignoring findings by agency nonexamining consultants (in this case, Drs. Stahl and Knox) of moderate limitations in concentration, persistence, or pace that those experts themselves omitted from their narrative conclusions. *See* Statement of Errors at 8-10. I agree with the commissioner, *see* Opposition at 5-6, that this case more closely aligns with *Wallace v. Astrue*, No. 1:11-cv-260-DBH, 2012 WL 1077454 (D. Me. Mar. 29, 2012) (rec. dec., *aff'd* Apr. 17, 2012), in which this court distinguished *Lindsey* in rejecting a similar argument.

In *Lindsey*, an ALJ found, in relevant part, that Lindsey, who had a severe bipolar disorder, retained the RFC "to perform only simple duties requiring little or no judgment that can be learned after a short demonstration or within 30 days[,]" that she could return to her past relevant work as a cashier or cleaner, and, in the alternative, that the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. Part 404, directed a finding that she could perform other work existing in significant numbers in the national economy and, hence, was not disabled. *Lindsey*, 2011 WL 86567, at *1. The commissioner conceded error in the finding that Lindsey could return to past relevant work, as a result of which the outcome hinged on the ALJ's alternative Step 5 finding. *See id*. at *2.

As in this case, an agency nonexamining consultant, David R. Houston, Ph.D., completed the commissioner's psychiatric review technique form ("PRTF"), checking boxes indicating that,

with respect to concentration, persistence, or pace, Lindsey was moderately impaired with regard to "prolonged concentration and attention[,]" "keeping a schedule, maintaining attendance, and being punctual[,]" and "completing a normal workday and workweek without interruptions from psychological conditions[.]" *Compare Lindsey*, 2011 WL 86567, at *5 *with* Record at 108, 120.[3] However, Dr. Houston then "merely wrote[,]" in his narrative summary of his conclusions regarding Lindsey's concentration, persistence, or pace, that she "would be able to carry out simple tasks." *Lindsey*, 2011 WL 86567, at *5.

The court acknowledged that the narrative section of Dr. Houston's PRTF, rather than the summary conclusion checkboxes, constituted his official RFC opinion, as a result of which "it is generally permissible for an [ALJ] to rely on a consulting expert's narrative findings without treating a particular checkbox conclusion of a 'moderate' limitation in a specific area as necessarily calling for a corresponding functional restriction." *Id*. at *6. However, the court was "not persuaded that the disappearance of the concentration, persistence, and pace summary conclusions [wa]s adequately explained in Dr. Houston's narrative or elsewhere in the forms he signed." *Id*.

Given that ambiguity, as well as the ALJ's reliance at Step 5 on the Grid rather than the testimony of a vocational expert and the separate problem that the ALJ had apparently changed his mind that Lindsey had disabling mental limitations "based on a lay assessment of new treatment records never reviewed by Dr. Houston or another . . . psychologist[,]" the court concluded that Dr. Houston's "telegraphic narrative, which d[id] not explain the disappearance of seemingly significant summary conclusions, f[e]ll[] short of providing a substantial evidentiary basis for application of the [Grid] at step 5." *Id*. at *6-7.

---

[3] Drs. Stahl and Knox also checked boxes indicating that the plaintiff was moderately limited in his ability to work in coordination with or in proximity with others without being distracted by them. *See* Record at 108, 120. Nothing turns on this distinction.

8

In *Wallace*, there was "a similar 'disappearance' in a [PRTF] filled out by Dr. Houston . . ., but that similarity [wa]s not dispositive" given two significant differences between the cases. *Wallace*, 2012 WL 1077454, at *4.

First, and most significantly, while the ALJ in *Lindsey* "apparently relied solely on Dr. Houston's report to support the assigned RFC[,]" the ALJ in *Wallace* relied on additional evidence, rendering any error in the Houston PRTF harmless. *Id*. That evidence included much of the medical evidence, Wallace's testimony and reported activities of daily living, the report of an agency examining consultant, Edward Quinn, Ph.D., which the ALJ assigned some weight, and the report of a second agency nonexamining consultant, Dr. Stahl, whose narrative conclusions (*i.e.*, RFC opinion) indicated, *inter alia*, that Wallace was able to work in two-hour blocks over the course of a normal workday/workweek. *See id*. at *4-5.

Second, and also significantly, the court noted that, while, in *Wallace*, Dr. Houston had included a limitation to "'understand, remember, and carry out simple tasks[,]'" the "only limitation in the RFC in *Lindsey* that could possibly relate to such a finding was 'the capacity to perform only simple duties requiring little or no judgment that can be learned after a short demonstration or within 30 days.'" *Id*. at *4 n.3 (citations omitted).

As the commissioner observes, *see* Opposition at 5-6, both distinctions are present in this case. The ALJ relied not only on the Stahl and Knox RFC opinions but also on the Fink report and a detailed review of the plaintiff's activities of daily living and educational, work, and treatment history. *See* Record at 32-38. He noted, for example, that the plaintiff enjoyed playing videogames, working on cars, fishing, dirt biking, and snowmobiling up to his physical limits and that he "had self-discontinued medication prescribed for his ADHD but had no difficulty concentrating and had lead a normal life off medication for greater than one year." *Id*. at 32. In

9

addition, Drs. Stahl and Knox determined not only that the plaintiff was limited to the performance of simple tasks but also that he could perform such tasks in two-hour blocks over the course of a normal workday/workweek. *See id*. at 108, 121. In so finding, they seemingly accounted for the moderate limitations in concentration, persistence, or pace that they had identified in their checkbox findings.[4]

At oral argument, the plaintiff's counsel endeavored to distinguish *Wallace* on the basis that the examining consultant in that case, whose opinion the ALJ gave only some weight, observed no attentional deficits or memory issues, whereas Dr. Fink, whose opinion the ALJ in this case gave great weight, found consistent and profound attentional issues. However, this point mirrors the plaintiff's earlier argument that the Fink report did not support the opinions of Drs. Stahl and Knox, which I have found unavailing for the reasons discussed above.

The plaintiff, hence, falls short of demonstrating his entitlement to remand on the basis of the asserted internal inconsistency in the Stahl and Knox findings.[5]

---

[4] Indeed, in completing the "checkbox" section of the PRTF pertaining to concentration, persistence, or pace, Drs. Stahl and Knox indicated that the plaintiff was not significantly limited in his ability to carry out very short and simple instructions, but markedly limited in his ability to carry out detailed instructions. *See* Record at 108, 120; *Grivois v. Colvin*, No. 1:14-cv-68-JHR, 2015 WL 1757152, at *5-6 (D. Me. Apr. 17, 2015) (rejecting claimant's argument that ALJ "erroneously overlooked evidence indicating that he would be very slow at any job he attempted," including agency nonexamining consultant's PRTF checkbox finding that claimant had moderate limitations in his ability to perform at a consistent pace without an unreasonable number and length of rest periods, when the claimant "overlook[ed] other [checkbox] findings . . . that shed light on the moderate finding on which he relie[d,]" for example, that, "while the [claimant]'s ability to understand remember, and carry out detailed instructions was *markedly* limited, his ability to understand, remember, and carry out very short and simple instructions was *not significantly* limited"; noting, "This suggests that, while [the claimant's] ability to perform at a consistent pace was moderately limited as a whole, it was not significantly limited with respect to short, simple instructions.") (emphasis in original).

[5] The plaintiff also cites *Maldonado v. Astrue*, Civil No. 08-412-B-W, 2009 WL 1885057 (D. Me. June 30, 2009) (rec. dec., *aff'd* July 23, 2009), for the proposition that even simple work requires sustained attention. *See* Statement of Errors at 9-10. However, as the commissioner notes, *see* Opposition at 6, in *Maldonado*, the ALJ "essentially equated unskilled jobs and a moderate limitation in concentration, persistence, and pace[,]" *Johnson v. Colvin*, No. 1:13-cv-00297-JDL, 2014 WL 4181606, at *5 (D. Me. Aug. 21, 2014) (citation and internal quotation marks omitted). By contrast, the ALJ in *Johnson* "did not merely equate a moderate limitation in concentration, persistence, or pace with unskilled work but, rather, modified the universe of unskilled work, limiting the [claimant] to understanding, remembering, and carrying out simple one- to six-step instructions and persisting at that level of complexity for eight hours a day, five days a week." *Id*. (citation omitted). In this case, as well, the ALJ modified the universe of unskilled work, limiting the plaintiff to "simple and repetitive tasks in an environment with no public interaction and only occasional interaction with coworkers and supervisors." Finding 4, Record at 31.

## B. Handling of Plaintiff's DDD

The plaintiff finally contends that the ALJ impermissibly assessed light limitations flowing from his DDD on the basis of his own lay interpretation of the raw medical evidence, warranting remand. *See* Statement of Errors at 10-14. At oral argument, his counsel asserted that he should have been found, at most, capable of performing sedentary work. However, as the commissioner argues, *see* Opposition at 14-17, the ALJ made a permissible common-sense judgment in the circumstances.

The First Circuit has observed that, "since bare medical findings are unintelligible to a lay person in terms of [RFC], the ALJ is not qualified to assess [RFC] based on a bare medical record." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (citations omitted). "This principle does not mean, however, that the [commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as [she] does not overstep the bounds of a lay person's competence and render a medical judgment." *Id.*

The record contained opinions of two experts bearing on the plaintiff's physical RFC. Agency nonexamining consultant Robert Hayes, D.O., concluded on February 17, 2015, that the plaintiff had a medically determinable back impairment that was nonsevere, explaining that, although the medical evidence of record documented "a long history of back pain, exams consistently show[ed] normal strength and ROM [range of motion]." Record at 119. And, after the plaintiff suffered a work-related back injury in September 2015 while pushing a heavy cart that tipped over, treating nurse practitioner Samara Shiromani, FNP, assessed work restrictions reflected in notes of four visits spanning the period from September 11, 2015, through April 13, 2016. *See id.* at 409-22.

The ALJ stated that he accorded "partial weight" to both the Hayes and Shiromani opinions, explaining, with respect to the Hayes opinion, that "evidence received at the hearing level supports a finding that [the plaintiff's] lumbar spine impairment limits his abilities to lift and carry[,]" and that he had "considered" FNP Shiromani's "work restrictions related to the [plaintiff]'s spinal impairment . . . in reducing him to light work." *Id*. at 38. Nonetheless, the ALJ's assessed physical RFC did not neatly align with any of the Shiromani restrictions.

Light work is defined to involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). However, during the plaintiff's initial two visits, on September 11, 2015, and September 23, 2015, FNP Shiromani imposed restrictions against lifting more than 10 pounds or lifting for more than 10 minutes continuously, and during his final two visits, on February 1, 2016, and April 13, 2016, she imposed no specific lifting or carrying restrictions. *See id*. at 411, 414, 417, 421. Instead, FNP Shiromani stated in her note of the plaintiff's February 1, 2016, visit that he "would potentially be able to maintain employment with modifications[,]" *id*. at 414, and in her note of his April 13, 2016, visit that his "work capacity/volunteering options are limited right now[,]" *id*. at 411.

Significantly, as the commissioner underscores, *see* Opposition at 16-17, FNP Shiromani's findings on musculoskeletal examination at all four visits were minimal, *see* Record at 420-21 (all findings noted to be normal on low back pain physical examination on September 11, 2015, with no lumbar musculature tenderness or spinal tenderness), 417 (plaintiff noted to be ambulatory on September 23, 2015, with steady gait, a good range of motion in the back and hips, mild pain elicited with right straight leg raising, and no pain with left straight leg raising), 413 (same findings on February 1, 2016, as on September 23, 2015), 410 (plaintiff noted to be ambulatory with a steady gait on April 13, 2016, with no musculoskeletal abnormalities noted).

12

As the commissioner observes, *see* Opposition at 11-12, as a matter of law, FNP Shiromani's specific lifting restrictions, imposed for less than a five-month period, do not demonstrate that the plaintiff had a back impairment meeting the commissioner's so-called duration requirement, pursuant to which both an impairment and a resulting inability to work must last, or be expected to last, for a continuous period of at least 12 months, *see, e.g.*, 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002) (commissioner's 12-month duration requirement applies "to both the 'impairment' and the 'inability' to work requirements").[6]

In turn, the failure to meet the duration requirement, coupled with FNP Shiromani's minimal findings on examination, permitted the ALJ to make the common-sense determination that the plaintiff had (at most) a light lifting limitation during the relevant period. *See, e.g., Purdy*, 887 F.3d at 14 (in circumstances in which "[n]o one could reasonably read [claimant's medical] records as support for finding or predicating a twelve-month duration of any impairment from" stress fracture of claimant's femur, ALJ did not err in according little weight to treating source's opinion and "was entitled to make a common-sense judgment that the healing stress fracture did not preclude [the claimant] from performing some sedentary work") (citation and internal punctuation omitted); *Manso-Pizarro*, 76 F.3d at 17 ("where the medical evidence shows relatively little physical impairment," or where "the extent of functional loss, and its effect on job performance, would be apparent even to a lay person[,]" "an ALJ permissibly can render

---

[6] The plaintiff relies in part on reports made by his mother to Kathryn King, FNP, on May 13, 2014, and FNP Shiromani on September 11, 2015, that Shubha V. Raju, M.D., had previously restricted him from lifting and carrying more than 10 to 15 pounds, with no prolonged lifting. *See* Statement of Errors at 10, 12; Record at 331-32, 419. However, as the commissioner points out, *see* Opposition at 12-13, the only note of record countersigned by Dr. Raju reflects no such limitation, *see* Record at 304-06. The purported Raju limitation, hence, is not established by the medical evidence of record.

a commonsense judgment about functional capacity even without a physician's assessment") (citations and internal quotation marks omitted).

Remand, accordingly, is also unwarranted on the basis of this point of error.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 21st day of October, 2018.

/s/ John H. Rich III  
John H. Rich III  
United States Magistrate Judge